UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JAMES KOON** | **CIVIL ACTION NO. 3:13-cv-2538** |
|     LA. DOC #305523 | |
| VS. | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN BURL CAIN** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* petitioner James Koon filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on August 21, 2013. Petitioner is an inmate in the custody of Louisiana's Department of Corrections; he attacks his 1996 conviction for second degree murder and the life sentence imposed by the Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d).

*Statement of the Case*

The Ouachita Parish Grand Jury indicted petitioner on a charge of second degree murder in proceedings assigned Docket Number 96-F-0458 of the Fourth Judicial District Court, Ouachita Parish. His trial commenced on May 12, 1997. On May 16, 1997, he was found guilty as charged and thereafter sentenced to serve life without parole. [Doc. 1-3, p. 5]

He appealed his conviction and sentence to the Second Circuit Court of Appeals raising claims of (1) sufficiency of the evidence; (2) trial court error in allowing the introduction of evidence concerning the victim's prior injuries; (3) trial court error in admitting photographs of

the residence and allowing testimony regarding items depicted in the photographs; (4) erroneous denial of motions for mistrial; trial court error in allowing Dr. Sullivan to give an opinion even though he was not qualified as an expert pathologist; (5) error in allowing the jury to hear petitioner's recorded statement to the police; (6) failure to comply with La. C.Cr.P. art. 894.1 and (7) excessiveness of sentence. On February 24, 1999 petitioner's conviction and sentence were affirmed. *State of Louisiana v. James Koon*, 31,177 (La. App. 2 Cir. 2/24/1999), 730 So.2d 503. Petitioner did not seek further direct review in the Louisiana Supreme Court;[1] nor did he seek further direct review in the United States Supreme Court. [Doc. 1, ¶9(h)]

Petitioner filed his first application for post-conviction relief on November 8, 2000. [Doc. 1, ¶11] It was denied by the District Court on December 18, 2002 [Doc. 1-1, p. 3], thereafter by the Second Circuit Court of Appeals and then, finally, on April 23, 2004 by the Louisiana Supreme Court. *State of Louisiana ex rel. James Koon v. State of Louisiana*, 2003-1314 (La. 4/23/2004), 870 So.2d 289.[2]

Sometime prior to June 29, 2010, petitioner corresponded with his trial attorney, Mr. Louis Scott, apparently in an effort to obtain a copy of his case file. In a response dated June 29, 2010, Scott agreed to look in storage for his file. He also wrote, "I also remember that the doctor

---

[1] Petitioner implies that he sought and was denied further direct review and that writs were denied in *State of Louisiana ex rel. James Koon v. State of Louisiana*, 2003-1314 (La. 4/23/2004), 870 So.2d 289. [Doc. 1, ¶9(g)] However, that writ judgment references the judgment of the Court of Appeals under Docket Number 37,372-KH and not 31,177-KA, the Docket Number of the appeal judgment of the Second Circuit Court of Appeals.

[2] In his memorandum petitioner contends that he "exhausted said matter (i.e. his first application for post-conviction relief) to the Louisiana Supreme Court and was denied." [Doc. 1-1, p. 3] The presumptively reliable published jurisprudence contains two Louisiana Supreme Court judgments, the 2004 judgment mentioned in fn 1 above and the judgment terminating his second round of post-conviction relief, *State of Louisiana ex rel. James Koon v. State of Louisiana*, 2013-0183 (La. 7/31/2013), 118 So.3d 1109.

who testified used some junk science in his testimony." [Doc. 1-3, p. 4] Scott wrote again to petitioner on September 24, 2010. He apparently was able to locate the file which had been maintained by co-counsel, Robert Johnson. Scott also enclosed copies of documents he obtained from the Clerk of Court's Office. He concluded the letter as follows, "I always had a strange feeling about the doctor who testified. I hear that he may have testified differently in the other trial." [Doc. 1-3, p. 2]

Sometime prior to July 15, 2010, petitioner or his family had retained the services of the Review Case Research, LLC, apparently for the purpose of investigating and presenting a post-conviction claim. On July 15, 2010, Mrs. A. Houston, the Program Director of the National Inmate Advocacy Program (NIAP) corresponded with petitioner and advised that her organization had picked up petitioner's file from Review Case Research and were "wrapping up the investigation." [Doc. 9-5, p. 2]

On some unspecified date petitioner received a memorandum prepared by the "National Inmate Advocacy Program" (NIAP) dated September 15, 2011, which indicates that Dr. Steven T. Hayne, one of the physicians who testified on behalf of the State as an expert witness, was in fact not an expert in the field of forensic pathology. [Doc. 1-2, p. 23] According to the correspondence petitioner received from NIAP –

> Dr. Steven Haynes testified at Mr. Koon's trial as an expert in Forensic Clinical and Atamical [sic] Pathology. He was not certified due to the fact that he did not pass the examination. All of which was verified with the American Board of Pathology. In other words, he was not certified in Pathology period which violated Mr. Koon's rights to a fair trial. [Doc. 1-2, p. 26]

On some unspecified date petitioner was provided a letter dated April 10, 2012, from Betsy D. Bennett, M.D., Ph.D, Executive Vice President of The American Board of Pathology to Brenda Ann Brown which stated, "Steven Timothy Hayne, M.D. is a diplomate of the American

3

Board of Pathology, having been certified in combined Anatomic Pathology and Clinical Pathology effective 05/30/1986. The certificate is not time-limited." [Doc. 1-2, p. 29]

On July 30, 2012, petitioner filed a second application for post-conviction relief relying on this allegedly newly discovered evidence. [Doc. 1-2, pp. 1-61, Doc. 1-3, pp. 1-4[3]] In support of his claim that Dr. Hayne testified falsely with regard to his expertise in the field of forensic pathology, he offered an excerpt of the trial transcript which included the testimony of Dr. Hayne as follows:

> Q. Would you state your name and occupation for the record, please.
> A. Steven Timothy Hayne, I'm a pathologist who practices in the fields of anatomic, clinical and forensic pathology.
> Ms. Hamm (prosecutor): Your Honor, at this time the state would offer Dr. Hayne as an expert in anatomical and forensic pathology.
> Mr. Scott (defense counsel): Well, I would agree with him being an expert in forensic pathology but I never knew anything about anatomical but – I mean I have heard him testify before. If he says that – are you an expert in anatomical pathology?
> A. I'm board certified in anatomical and clinical pathology as well as forensics.
> Mr. Scott: Well, we would stipulate that he's an expert. [Doc. 1-2, pp. 31-32]

He also provided a copy of the NIAP report, the letters from Mr. Scott, and the letter from Dr. Bennett.

On August 28, 2012 the State filed procedural objections to petitioner's application for post-conviction relief. The State argued that the petition was time-barred under La. C.Cr.P. art. 930.8, having been filed more than 2 years after petitioner's conviction became final under Louisiana law, and, that it was successive and thus barred by the provisions of art. 930.4. Finally, the State argued that Dr. Hayne was, contrary to petitioner's assertion, board certified in

---

[3] The pro se pleading was dated July 23, 2012 [Doc. 1-2, p. 7]; petitioner's affidavit of verification and his affidavit of newly discovered evidence were executed on July 30, 2012 [Doc. 1-2, p. 9 and p. 23] and it was received and filed on August 3, 2012. [Doc. 1-2, p. 1]

forensic pathology at the time of petitioner's trial as evidenced by the August 20, 2012, letter from Nick Rebel, Executive Director of the American Academy of Neurological and Orthopedic Surgeons [Doc. 1-3, p. 12] as well as board certified in the fields of Anatomic and Clinical Pathology as evidenced by the October 5, 1993, letter of William M. Hartmann, M.D., Executive Vice President of The American Board of Pathology. [Doc. 1-3, p. 11]

Petitioner then traversed the State's procedural objections and answer and cited a Mississippi Supreme Court case, *Edmonds v. State*, 955 So.2d 787 (Miss. 5/10/2007) wherein the Court voiced concerns over Dr. Hayne's qualifications to serve as State Medical Examiner due to his failure to obtain Board Certification in Forensic Pathology by the American Board of Pathology. In support of his concerns, Justice Diaz quoted extensively from an October 2006 magazine article authored by Radley Balko. [Doc. 1-3, pp. 27-28][4]

---

[4] The language quoted by petitioner is found in Presiding Justice Diaz's Special Concurrence as follows:

¶ 46. While the majority finds that 'Dr. Hayne is qualified to proffer expert opinions in forensic pathology,' that determination is exclusively left to the trial courts; we only review that determination. No expert is *Daubert*-proof. As science, like the law, evolves over time, one generation's expert is another's quack.

¶ 47. There are serious concerns over Dr. Hayne's qualifications to provide expert testimony. First, he admitted at trial that he was not certified in forensic pathology by the American Board of Pathology because he walked out on the qualifying examination. This means he is unqualified to serve as State Medical Examiner, as our law requires that '[e]ach applicant for the position of State Medical Examiner shall, as a minimum, be a physician who is eligible for a license to practice medicine in Mississippi and be certified in forensic pathology by the American Board of Pathology.' Miss.Code Ann. § 41–61–55 (Rev.2005).

¶ 48. Second, Dr. Hayne testified that in his twenty-five-year career, he has performed 25,000 to 30,000 autopsies. This would mean that he has performed at least 1,000 autopsies per year since he was admitted to practice, which seems highly unrealistic.

¶ 49. Finally, a recent magazine article reported on another case where Dr. Hayne presented questionable testimony. The article examined his qualifications and even discussed his testimony

On September 19, 2012, the District Court denied the application for post-conviction

---

in Tyler's case:

> Mississippi's forensic pathology system is, in the words of one medical examiner I spoke with, 'a mess.' The state has no official examiners. Instead, prosecutors solicit them from a pool of vaguely official private practitioners to perform autopsies in homicide cases. Steven Hayne, who performed the autopsy on Jones, appears to be a favorite. In the words of Leroy Reddick, a respected medical examiner in Alabama, 'Every prosecutor in Mississippi knows that if you don't like the results you got from an autopsy, you can always take the body to Dr. Hayne.' Defense attorneys in the state bristle at Hayne's name. In a case last year in Starkville, he testified that he could tell by the wounds in a corpse that there were two hands on the gun that fired the bullet, consistent with the prosecution's theory that a man and his sister team jointly pulled the trigger. Several medical examiners have told me such a claim is preposterous.
>
> Hayne testified at Maye's trial that he is 'board certified' in forensic pathology, but he isn't certified by the American Board of Pathology, the only organization recognized by the National Association of Medical Examiners and the American Board of Medical Specialties as capable of certifying forensic pathologists. According to depositions from other cases, Hayne failed the American Board of Pathology exams when he left halfway through, deeming the questions 'absurd.' Instead, his C.V. indicates that he's certified by two organizations, one of which (the American Board of Forensic Pathology) isn't recognized by the American Board of Medical Specialties. The other (the American Academy of Forensic Examiners) doesn't seem to exist. Judging from his testimony in other depositions, it's likely Hayne meant to list the American College of Forensic Examiners. According to Hayne, the group certified him through the mail based on 'life experience,' with no examination at all. Several forensics experts described the American College of Forensic Examiners to me as a 'pay your money, get your certification' organization. A February 2000 article in the American Bar Association Journal makes similar allegations, with one psychologist who was certified through the group saying, 'Everything was negotiable—for a fee.'
>
> Radley Balko, The Case of Corey Maye, Reason (Oct.2006) (citing Mark Hansen, Expertise to Go, 86 A.B.A.J. 44–52 (Feb.2000)).

¶ 50. Accordingly, this Court should not give Dr. Hayne, or any expert, a free pass to testify before our juries. With *Daubert*, we have equipped our trial judges with the appropriate tools to distinguish between qualified expert testimony and 'quackspertise.' It is up to them to make an individualized determination as to whether each expert meets the requirements of Rule 702. *Edmonds v. State*, 955 So.2d at 802-03.

relief and in so doing adopted the reasoning proffered by the State in its answer and procedural objections. [Doc. 1-3, p. 40] On October 11, 2012, petitioner applied for writs in the Second Circuit Court of Appeals. [Doc. 1-3, pp. 34-53] On December 20, 2012, the Second Circuit denied writs. *State of Louisiana v. James Koon*, No. 47,965-KH. [Doc. 1-3, pp. 74-75] On January 17, 2013. petitioner applied for writs in the Louisiana Supreme Court. [Doc. 1-3, pp. 54-73] On July 31, 2013. the Supreme Court denied writs without comment. *State of Louisiana ex rel. James Koon v. State of Louisiana*, 2013-0183 (La. 7/31/2013), 118 So.3d 1109.

Petitioner presented the instant petition to the prison's Legal Programs Department for filing on August 21, 2013, and it was scanned and filed electronically on that date. [Doc. 1, p. 1] Petitioner argues the same two claims for relief litigated in the second application for post-conviction relief –

(1) He received newly discovered facts from the National Inmate Advocacy Program that Dr. Steven Timothy Hayne was not Board Certified as a forensic pathologist; thereby denying petitioner's right to a fair trial under the 5th, 6th and 14th Amendments to the United States Constitution [Doc. 1-1, p. 8];

(2) Dr. Hayne intentionally committed ill practice and fraud upon the Court when he lied that he was Board Certified as a Forensic Pathologist in violation of the petitioner's right to Due Process as guaranteed by the 5th, 6th, and 14th Amendments to the United States Constitution [Doc. 1-1, p. 14]

On October 1, 2013, the undersigned completed an initial review of the pleadings and exhibits and directed petitioner to provide, among other things, "Copies of the letters sent by petitioner to attorney Louis G. Scott which were responded to by Mr. Scott in his letters of June 29 and September 24, 2010;" and "Correspondence between petitioner (or anyone acting on his

7

behalf) to the National Inmate Advocacy Program prompting the Memorandum of September 15, 2011 along with a **COMPLETE** copy of the Memorandum supplied to petitioner by NIAP..."[Doc. 8] On November 7, 2013, petitioner responded but failed to provide copies of the letters sent by petitioner to Mr. Scott; nor did he provide copies of the correspondence between petitioner and NIAP, claiming that many of his legal documents were destroyed when the Mississippi River flooded portions of the Louisiana State Penitentiary. [See Doc. 9]

*Law and Analysis*

*1. Timeliness under § 2244(d)(1)(A)*

This petition was filed after the April 1996 effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999); *In re Smith,* 142 F.3d 832, 834, citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Title 28 U.S.C. §2244(d)(1)(A) provides a one-year statute of limitations for the filing of an application for writ of *habeas corpus* by persons, such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[5]

However, the statutory tolling provision set forth in 28 U.S.C. §2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir.

---

[5] Petitioner argues that he is entitled to have limitations reckoned as provided in 28 U.S.C. §2244(d)(1)(D) which reckons limitations from "the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence." That claim is discussed in Part 2, below.

1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998). Federal courts may raise the one-year time limitation *sua sponte*. *Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Petitioner appealed to the Second Circuit Court of Appeals, and on February 24, 1999, his conviction and sentence were affirmed. *State of Louisiana v. James Koon*, 31,177 (La. App. 2 Cir. 2/24/1999), 730 So.2d 503. Petitioner did not seek further direct review in the Louisiana Supreme Court; nor did he seek further direct review in the United States Supreme Court. [Doc. 1, ¶9(h)] Petitioner's judgment of conviction and sentence became final by the conclusion of the time for seeking further direct review on or about March 16, 1999, when the 30 day period for filing an application for a writ of *certiorari* in the Louisiana Supreme Court elapsed. [See Supreme Court Rule X, §5(a) which provides, "An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal..."] Petitioner therefore had one year, or until March 16, 2000, within which to file a timely petition for *habeas corpus* in this Court. He cannot rely upon the tolling provision of Section 2244(d)(2) because he did not file his first application for post-conviction relief until November 8, 2000 [Doc. 1, ¶11] and by that time limitations had already expired and could not be revived by the otherwise timely application for post-conviction relief.

### 2. Timeliness under § 2244(d)(1)(D)

As previously noted, petitioner concedes that his petition was untimely if limitations is

calculated pursuant to Section2244(d)(1)(A). However, petitioner maintains that he is entitled to have limitations reckoned from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The factual predicate of his claims for relief is his claim that Dr. Hayne was not qualified to testify as an expert witness. He implies that he discovered this factual predicate when he received the NIAP report dated September 15, 2011. [Doc. 1-2, p. 23] If limitations is reckoned from that date, then the instant petition is indeed timely since petitioner was apparently able to toll limitations for the period between July 30, 2012 (the date petitioner filed his second application for post-conviction relief Doc. 1-2, pp. 1-61), through July 31, 2013 (the date the Louisiana Supreme Court denied writs ending his State post-conviction litigation; see *State of Louisiana ex rel. James Koon v. State of Louisiana*, 2013-0183 (La. 7/31/2013), 118 So.3d 1109).

However, limitations is not reckoned from the date petitioner discovered the factual predicate of his claim, but rather from the date it "could have been discovered through the exercise of due diligence..." [Section 2244(d)(1)(D)] and petitioner bears the burden of establishing that date. *See Mead v. Cain*, Civil Action No. 08-3173 (E.D.La. 2010), citing *Redmond v. Jackson*, 295 F.Supp.2d 767, 772 (E.D. Mich. 2003) ("However, the time commences under § 2244(d)(1)(D) when the factual predicate for a petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner. Also, under § 2244(d)(1)(D), the time under the limitations period begins to run is when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts. In other words, § 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim. Rather, it is the actual or

putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits. Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. [Citations omitted].")

Here, it appears that petitioner had some knowledge of the factual predicate of his claims when he corresponded with his trial counsel, Mr. Louis Scott. As noted above, in the initial response dated June 29, 2010, Scott agreed to look in storage for petitioner's file; Scott also wrote, "I also remember that the doctor who testified used some junk science in his testimony." [Doc. 1-3, p. 4] Likewise, in the letter dated September 24, 2010, Scott concluded, "I always had a strange feeling about the doctor who testified. I hear that he may have testified differently in the other trial." [Doc. 1-3, p. 2] It is reasonable to assume that Scott, in both instances, was responding to suspicions voiced by petitioner with regard to the testimony of Dr. Hayne. It is therefore not unreasonable to conclude that petitioner had knowledge of the factual predicate of his claim as early as June 2010, and, if that is the case, it is clear that a period of more than 1-year elapsed between that date and July 30, 2012, the date petitioner filed his second application for post-conviction relief.

It is also worth noting that the September 15, 2011, Memorandum produced by the NIAP regarding Dr. Hayne, contained the following "Disclaimer" – "The issues discussed and identified in this evaluation, along with any deadlines, have been developed <u>based on information provided by the Defendant and/or the family of the Defendant.</u>" [Doc. 9-5, p. 1] Further, it appears that NIAP began their investigation sometime prior to their July 15, 2010, letter to

petitioner. [Doc. 9-5, p. 2 "We have picked up your file from [the Review Case Research Group] and as we can tell, the last letter that was sent to you was April 2, 2010, letting you know where they are with your case."] Again, the evidence submitted thus far by petitioner suggests that he was aware of the factual predicate of the claim sometime in 2010, if not before.

Finally, as previously noted, Dr. Hayne's expertise was questioned by the Mississippi Supreme Court in an opinion published in May 2007; Justice Diaz's Special Concurrence relied upon a magazine article published in 2006. In the absence of any evidence to the contrary, it is safe to conclude that a *habeas* petitioner exercising due diligence <u>should have discovered this information well before the fall of 2011.</u>

In other words, even if limitation's is reckoned in accordance with Section 2244(d)(1)(D), this petition is clearly time-barred.

*3. Equitable Tolling*

AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir.2006).

A *habeas corpus* petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 2549, 2562, 130 S.Ct. 2549, 2562, (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669

(2005)).  The burden of proof is on the petitioner seeking equitable tolling. *Pace*, 544 U.S. at 418.

Petitioner has alleged no facts to establish either extraordinary circumstances or due diligence and therefore he is not entitled to equitable tolling of the 1-year period of limitations defined by Section 2244(d).

*Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DISMISSED WITH PREJUDICE**  because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

    In Chambers, Monroe, Louisiana , November 26, 2013.

*[signature]*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE